IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States Courts
Southern District of Texas
FILED
MAR 19 2004
Michael N. Milby, Clerk

| | |
|---|---|
| FRANCISCO X. SOLIS § | |
| Plaintiff - Petitioner § | |
| V § | |
| DOUG DRETKE, DIRECTOR § | CIVIL ACTION No. 8-01-089 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE § | |
| INSTITUTIONAL DIVISION § | |
| Defendant - Respondent § | |

## MOTION FOR ORDER AUTHORIZING
## SECOND APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Francisco X. Solis, Petitioner, Pro-Se in the above styled cause, and respectfully presents this Motion For Order Authorizing Second Application For Writ of Habeas Corpus pursuant to 28 U.S.C. § 2244 (B). The Applicant would show the Court the following in support thereof:

### I. JURISDICTION

Pursuant to 28 U.S.C. §§ 2241; 2244(B)(i) and (ii); 2254(e)(1), and F.R.A.P. Rule 5.1, this Honorable Court has jurisdiction over all parties and matters concerning the above styled cause.

### II. HISTORY OF THE CASE

On 16 January, 1991, in the 197th Judicial District Court of Cameron County Texas, the Applicant pled GUILTY to Murder with a Deadly Weapon with intent to committ aggravated sexual assault. Punishment was assessed at two consecutive life sentences.

On or about September, 1998, the Applicant discovered that the Assistant District Attorney had falsified evidence that was presented to the Grand Jury,

1

in order to obtain an indictment. Though the Applicant has requested access to the taped and/or transcribed confessions of Joe Alvarado, this request has been denied. The taped and/or transcribed confessions of Joe Alvarado will show that the Petitioner was induced to accept the offer of two life sentences or face the death penalty due to prosecutorial misconduct by Joe Alvarado, an agent of the State. The Petitioner's attorney was more concerned with protecting the Petitioner from the death penalty, than with trying to actively pursue a case of innocence due to the alleged evidence that the District Attorney had presented to the Grand Jury. Had this evidence been available to the Petitioner and his attorney prior to trial, the Petitioner would not have pled guilty. The plea that was given was not intelligently or knowingly made, but was made under duress, as the attorney representing the Petitioner repeatedly brought threats of the death sentence from the District Attorney with the offer of 2 life sentences. The Petitioner had no alternatives but to accept the plea offer.

The Petitioner has filed a prior § 2254 Application For Writ of Habeas Corpus in this Court on 4-5-2001. The Applicant requested to proceed In Forma Pauperis on May, 2001. This was granted on 4-5-2001.

The State Motioned for the Writ to be dismissed as time-barred pursuant to AEDPA on 7-31-2001. A Motion For Rebuttal was filed by the Petitioner on 9-12-2001. U.S. Magistrate Judge John W. Black filed a Report and Recommendation that the State's Motion to Dismiss be GRANTED. The Applicant filed an Objection to the Report and Recommendations on 9-5-2001. An ORDER adopting the findings of Judge Black's Report and Recommendations was filed by the U.S. District Court on 9-24-2001.

The Petitioner filed a Motion For Certificate of Appealability on 10-4-2001. The Petitioner also filed a Notice of Appeal on 10-16-2001- This was denied on 10-19-2001.

Having found that Judge Filemon B. Vela was the brother-in-law to the Applicant's attorney that prosecuted the case, the Petitioner filed a Motion For Disqualification For Recusal. This Motion was denied on 11-16-2001.

The Petitioner now files this Motion For Order Authorizing a Second Application For Writ of Habeas Corpus for the following reasons:

1) Prosecutorial Misconduct in falsifying evidence in order to obtain indictment;

2) Prosecutorial Misconduct for withholding evidence favorable to the Petitioner that, had it been known, would have caused the Trial Judge to lack jurisdiction in bringing this cause to trial;

3) Faulty indictment that has been shown to be fundamentally defective prevents Trial Judge from having jurisdiction over this cause;

4) Judicial Misconduct for Trial Judge's failure to follow Article 11.07, V.A.C.C.P. (2)(d) in that he failed to review the evidence for content or validity.

### III. ARGUMENTS AND AUTHORITIES
#### PROSECUTORIAL MISCONDUCT

The Applicant brings the issue of Prosecutorial Misconduct before the Court, as the prosecution has tampered with evidence brought before the Grand Jury, who used this evidence to return an indictment. The Prosecution has also continued to withhold this favorable evidence from the Petitioner, in violation of "Brady".

Assistant District Attorney Joe Alvarado, who worked directly for the State in this case, committed suicide. Prior to committing suicide,, Mr. Alvarado made a taped confession that he had tampered with evidence presented before the Cameron County Grand Jury in order to obtains indictments. The Petitioner was made aware of this through another defendant, who stated in her letter that the Petitioner's case was one of the cases that Mr. Alvarado admitted tampering with, in order to obtain an indictment. The tapes and transcripts left will show that prosecutorial misconduct was used in order to obtain an indictment against the

3

Petitioner.

"Although defects in an indictment may be waived, the complete lack of a valid indictment is not subject to waiver."
Hicks v State, 999 SW2d 417 (Tx Cr App 1999).

"A Federal Court will review a state indictment to determine only if it is so fundamentally defective as to have deprived the convicting court of jurisdiction to try the case."
Hamilton v McCotter, 772 F2d 171 (5th Cir 1985); Branzburg v Hayes, 92 S.Ct. 2646 (1972).

"While most rights and procedural matters may be waived, jurisdictional matters may not be."
Ex Parte Smith, 650 SW2d 68 (Tx Cr App 1981); Lackey v State, 574 SW2d 97 (Tx Cr App 1978).

"Claims of prosecutorial misconduct are determined on a case by case basis."
Perkins v State, 902 SW2d 88, reh. overruled, suppl. 905 SW2d 452, PDR Ref. (Tx Cr App 1995).

"Factors that are considered in determining whether prosecutorial misconduct occurred are whether prosecutor deliberately violated court order, whether prosecutorial misconduct was so blatant as to border on being contumacious, and whether defendant objected to conduct of prosecution."
Harris v State, 905 SW2d 708, PDR Ref. (Tx Cr App 1995).

The Texas State Constitution, Article 1 § 10 states,
"[A]nd no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury ..."

"As we indicated in Liner v Phelps, 731 F2d 1201 (5th Cir 1984), federal habeas relief may be invoked with respect to the sufficiency of the indictment only when the indictment is so fatally defective that under no circumstances could

4

a valid conviction result from the facts provable under the indictment, and that such a determination 'can be made only by looking to the law of the state where the indictment was issued.'."
Johnson v Estelle, 704 F2d 232, 236; 731 F2d at 1203 (5th Cir 1983).

"So it is at least arguable, in absence of case law or statutory authority, to the contrary, that Texas Courts would reach the conclusion that a wholly forged indictment does not confer criminal jurisdiction to the State Trial Court so that the 'conviction' would be void."
Hollingsworth v State, 87 Tex Cr R 248, 221 SW2d 978 (1920); King v State, 473 SW2d 43, 48 n.11, 52 (Tx Cr App 1971).

In the instant case at bar, the prosecution's agent tampered with evidence that the Grand Jury utilized to hand down an indictment. The fact that the State did not have enough evidence to obtain the indictment, without tampering with the evidence, shows that the indictment was not obtainable. Once the State tainted the evidence, they tainted the indictment, making it fundamentally defective. Thus the defect, "prosecutorial misconduct" rendered the Trial Judge's jurisdiction void, as the indictment itself, and the Grand Jury's decision were both void.

In Wong Sun v United States, 371 U.S. 471, 83 S.Ct. 407 (1963), the Court extended the exclusionary rule to evidence that was indirect product or "fruit of unlawful police conduct." When the State tainted the evidence presented to the Grand Jury, they wholly tainted any actions or decisions made by the Grand Jury. (See Frye v State, 846 SW2d 443 (Tx Cr App 1992).)

The Cameron County District Attorney has violated the Petitioner's Sixth and Fourteenth Amendment rights to fair and impartial trial, indictment only by Grand Jury through evidence untainted by the State, and equal protection and due process under the law. In fact, the actions of Joe Alvarado are FEDERAL violations of law, and knowing this, Joe Alvarado committed suicide to prevent his incarceration. The Continued incarceration of the Petitioner has deprived the Petitioner of his liberty

5

through violations of the Petitioner's rights to due process and equal protection guaranteed under the Texas and United States Constitutions.

## "VIOLATION OF "BRADY RULE"

The failure of the State to reveal the illegal actions of their agent has caused the Petitioner to be convicted of a crime for which he is not guilty of. The evidence was favorable to the Petitioner, as it showed that the District Attorney did not have enough evidence to obtain an indictment, less than any to obtain a conviction. (See Brady v U.S., 90 S.Ct. 1463).

"The claims of suppression and falsification of evidence were not raised in the first federal petition for obvious reasons: the factual ... basis ... was not reasonably available to counsel."

"We have stated expressly that on habeas review what we have to deal with is not the Petitioner's innocense or guilt, but solely whether the constitutional rights have been preserved."
Moore v Dempsey, 43 S.Ct. 265 (1923).

"With respect to successive habeas petitions, giving 'fair effects' to the intent of Congress is to construe 'the ends of justice' so Sanders did to mean that it is within the sound discretion of the Court to refuse to hear abusive meritless petitions, and to hear petitions in which the prisoner advances a potentially meritorious claim and provides a goo justification for returning to Court a second time with the same claim." Kuhlmann, supra at 2036.

First the State threatened the Petitioner with the death sentemnce if he failed to take the plea offer, then when evidence is discovered that the State has falsified documents and tampered with evidence in order to obtain the conviction, the State refuses to release said evidence. Then the Trial Court reviewed the Petitioner's Application for Writ of Habeas Corpus without ever

6

reviewing the alleged evidence for content or validity, in violation of Article 11.07(2)(d), V.A.C.C.P.. (See <u>Ex Parte Chambers</u>, 612 SW2d 573 (Tx Cr App 1984).

"If the State did not conduct an evidentiary hearing on the issue in petition, the Federal Court must."
<u>Maddox v Ford</u>, 818 F2d 1058 (5th Cir 1987); <u>Lesko v Lehman</u>, 925 F2d 1539 (5th Cir).

"If the Trial Court denied a hearing to an Applicant, said procedure violates Article 11.07 V.A.C.C.P., and further violates due process by denying the Applicant an opportunity to sustain his burden of proof."
<u>Ex Parte Campoes</u>, 613 SW2d 745, 746 (Tx Cr App 1981).

"The Supreme Court has ruled that the exclusionary rule applies not only to the illegally obtained evidence itself, but also to other incriminating evidence derived from the primary evidence."
<u>Silverthorne Lumber Co v U.S.</u>, 251 U.S. 385, 40 S.Ct. 182 (1920).

The Petitioner realizes that the "evidence" was not obtained from the Petitioner but that the "evidence" was a falsification created by the prosecution in order to get an indictment. The indictment, thus becomes "fruit of the poisonous tree" in that by the State's illegal activities, they obtained an indictment that otherwise would not have been obtainable. Then the State used said indictment to bring the Petitioner threats of the death sentence if he failed to plead guilty. The cruelty surrounding the murder of the victim was such, that the Petitioner felt if he was put before a jury, he would be found guilty no matter what. Especially when the Petitioner's own attorney had used his abilities only to bring the Petitioner plea offers to avoid the death sentence.

"Plaintiff who wishes to overturn Grand Jury's determination of probable cause must show clearly that transgression has been committed."
<u>Clayton v Prudence Insurance Co.</u>, 554 F.Suppl 628.

"in our criminal justice system, the prosecutor has at his disposal the substantial resources of the government, as well as considerable other advantages.

7

In exchange, that system reposes great trust in the prosecutor to place the ends of justice above the goal of merely obtaining a conviction."
Kirkpatrick v Whitley, 992 F2d 491 at 496 (5th Cir 1993).

In the instant case at bar, these resources included access to Grand Jury evidence, which was tampered with. Once the District Attorney learned of the illegal activities of his agent, Joe Alvarado, he failed to take any actions to investigate whom all these actions involved. He chose instead to hide the evidence and claim there is no direct correlation between the two events, i.e. the death of Joe Alvarado and his confession of tampering with the evidence presented to the Grand Jury, and the case involving the Petitioner. If this is the case, then the District Attorney should have no qualms about releasing said evidence for public and the Petitioner's scrutiny. Instead, he continues to hide it. One criminal defendant has gained access to this information, and has overturned her conviction based on the evidence. It is this Defendant that notified the Petitioner of the existence of the evidence. Her letter leaves the Petitioner to believe the District Attorney may be involved with the illegal activities of Joe Alvarado, and the illegal coverup of one of his agents. As such, the Petitioner claims the "Brady rule" has been, and continues to be violated by the District attorney. It is believed this evidence would exonerate the Petitioner of any wrongdoing in this crime.

"In reviewing prosecution's suppression of evidence, term 'prosecution' includes all members of 'prosecution team' both investigative and prosecutorial and no distinction is made between different agencies under same government."
O'Rarden v State, 777 SW2d 455, pet. ref. (Tx Cr App 1989).

"Information possessed by agent of the state is attributed to prosecutor even without any intention to engage in misconduct on the part of prosecutor, with respect to charge of failing to disclose information."
Johnson v State, 917 SW2d 135, PDR ref. (Tx Cr App 1996); Bagley v U.S., 105 S.Ct. 3375, 3376 - 3377 (1985).

8

"Testimony presented to Grand Jury contradicting testimony of government witnesses was BRADY material, subject to disclosure to defendant." <u>Herberman v U.S.</u>, 583 F2d 222 (5th Cir 1978).

The evidence presented is newly discovered evidence that was withheld from the Petitioner and his attorney by the prosecutor. Had this evidence been provided to the Petitioner, or his attorney, prior to trial, it is hardly debatable whether the indictment would have stood scrutiny, but would have been dismissed in accordance with state and federal law. Thus the fact that this is newly discovered evidence, not available to the defense prior to the guilty plea, and that such evidence obviously casts serious doubt on the decisions of the Grand Jury to present an indictment, renders the indictment void, and shows violation of the "Brady Rule" by the prosecutor's withholding of said evidence.

"The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defende, the result of the proceeding would be different. A reasonable probability is probabtlity sufficient to undermine confidence in the outcome. Conversely, if the prosecutor has knowingly used perjured testimony or false evidence, the standard is considerably less onerous; the conviction must be set aside if there is any reasonable likelihood that the false testimony [evidence] would have effected the jury's verdict." <u>Kirkpatrick</u>, supra, at 497.

When the prosecution tainted the evidence presented to the Grand Jury, they wholly tainted any actions made by the Grand Jury. (See <u>Frye v State</u>, 846 SW2d 443 (Tx Cr App 1992). They violated the Applicant's Sixth Amendment rights when the State's agent acted outside the law, in order to obtain the indictment. As such, the indictment was tainted and void. This. in effect, voided the jurisdiction of the 197th Judicial District Court of Cameron County, Texas. As such, the continued incarceration of the Petitioner is illegal, due to constitutional violations by the State and its agents. The Petitioner respectfully requests relief.

## AEDPA PROCEDURAL TIME-BAR

The Petitioner fully expects the State to argue any further actions by the Petitioner are barred by AEDRA, 28 U.S.C. § 2244(d). The Petitioner would argue,

"In criminal matters, the presentment of an indictment invests the Court with jurisdiction of the cause, and thus the filing of an indictment is essential to vest the Court with jurisdiction over a felony case."
SEE: Tex. Const. Article 5 § 12(B); IN RE Rubio, 55 SW3d 238 (Tx Cr App 2001).

"Defect which renders sentence void can be raised at any time."
Health v State, 817 SW2d 335 at 337 (Tx Cr App 1985); Ex PArte Beck, 922 SW2d 181 (Tx Cr App 1996).

The Petitioner would show that AEDPA is a procedural time-bar.

"We have held that a procedural default will be excused upon a showing of cause and prejudice."
Wainwright v Sykes, 97 S.Ct. 2497, 2507 (1977).

"Federal Courts retain the authority to issue the Writ of Habeas Corpus in a further, narrow class of cases despite a Petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice."
Carrier v Murray, 106 S.Ct. 2639, 2643 (1986).

"In addition, the exception to cause for fundamental misccarriage of justice gives meaningful content to the otherwise 'ends of justice' inquiry mandated by Sanders. Sanders drew the phrase 'ends of justice' from the 1948 version § 2244. Although the 1966 revision to an 'ends of justice' inquiry, a plurality of the Court, in Kuhlmann v Wilson, 106 S.Ct. at 2627, held that the inquiry remained appropriate and required federal courts to entertain successive petitions when a Petitioner supplements a constitutional claim with a 'colorable showing of factual

10

innocense'. The miscarriage of justice exception to cause serves as an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty."
Stone v Powell, 96 S.Ct. 3051 N.31 (1983).

In the instant case at bar, the Petitioner discovered that Assistant District Attorney Joe Alvarado falsified evidence presented to the Grand Jury in order to obtain an indictment. Joe Alvarado felt such shame at his actions that he made a taped confession, and then ended his own life. The Petitioner found out about Joe Alvarado's actions through another defendant, who had gained access to these tapes, and has since had her own sentence overturned. The Petitioner has requested access to these tapes, and/or transcripts of these tapes. They are public record, and are authorized for public viewing. The State has refused these requests.

"Federal State Court convictions under 28 U.S.C. § 2254 is predicated on the need to prevent the incarceration of an innocent person ... despite [the substantial] costs [federal habeas review imposes upon states], Congress has continued to afford federal habeas relief in appropriate cases, recognizing the need in a free society for an additional safeguard against compelling an innocent [person] to suffer an unconstitutional loss of liberty."
Kuhlmann v Wilson, 106 S.Ct. 2627 N.16 (1986); Stone v Powell, 96 S.Ct. at 3051 N.31 (1976).

"There is no doubt that in enacting § 2254, Congress sought to interpose the federal Courts between the States and the people, as guardians of the people's federal rights - to protect the people from unconstitutional actions."
Kuhlmann, supra; Reed v Ross, 104 S.Ct. 2901, 2907 (1984); Mitchum v Foster, 92 S.Ct. 2151, 2161 (1972).

"The federal habeas prisoner who claims he is detained pursuant to a final judgement of a State Court in violation of the U.S. Constitution is entitled to

11

have the federal habeas court make its own independent determination of his federal claim ... is in no way changed by our adaption of special rules for procedurally defaulted claims."
Wainwright, supra at 2506.

The Petitioner had no idea that the prosecution had illegally tampered with the evidence presented to the Grand Jury. The Petitioner's lawyer also had no idea that these actions had taken place. As far as the Petitioner's attorney was concerned, he had a duty to protect his client from the death penalty, and as such, he brought the Petitioner a continuous offer of 2 life sentences, or face the death penalty. Once the Petitioner discovered the illegal actions of the prosecutor's agent, he tried to obtain copies of the transcripts. But to no avail. The Petitioner filed a State § 11.07 Habeas Corpus challenging the actions of the State, but the Trial Court failed to hold any evidentiary hearing, violating Article 11.07 V.A.C.C.P. and also violating the Petitioner's rights to present his burden of proof. The failure of the Trial Court to review the tapes ond/or the transcripts of the tapes violated the Petitioner's rights to due process.

"It follows that when a proceeding is tainted by false statements and false evidence, the requirement of fundamental fairness is lacking."
U.S. v Wallace, 673 F.Suppl. 205, 208 (S.D. Tex. 1987).

## CONCLUSION

Wherefore, premises considered, the Petitioner respectfully requests this Honorable Court Order the State to provide this Court with all tapes and/or transcripts relating to the confession of Joe Alvarado's tampering with the evidence presented to the Grand Jury, and that this Honorable Court make an independent evidentiary hearing to determine the validity of the Petitioner's allegations, and that this Honorable Court grant the Petitioner any and all relief deemed appropriate by this Court once it has reviewed said evidence. Failure to grant the Petitioner's requests

12

gives the Cameron County District Attorney sanctions to tamper with evidence that they present to a Grand Jury, and also sanctions the Trial Court in abusing its discretion in holding evidentiary hearings when Article 11.07 Habeas Corpus Applications are presented to it. It also further denies the Petitioner his rights to have his Habeas complaint investigated and properly answered, which is a denial of due process and equal protection afforded to all Americans under the United States Constitution.

Respectfully Submitted: *Francisco X. Solis*
FRANCISCO X. SOLIS, ##586219
RAMSEY TWO UNIT, 1200 FM 655
ROSHARON, TEXAS  77583

## VERIFICATION

I, Francisco X. Solis, TDCJ-ID # 586219, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and that this Motion For Order Authorizing Second Application For Writ of Habeas Corpus was mailed in the Ramsey Two Units Mail system on the _13_ day of _MARCH_, 200_4_.

EXECUTED ON THIS THE _13_ DAY OF _MARCH_, 200_4_.

*Francisco X. Solis*
FRANCISCO X. SOLIS, #586219
PETITIONER, PRO-SE